UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERGEI RAKHMANIN, NATALIA STEPANOVA and SVETLANA LARINA, Individually and on behalf of all other persons similarly situated, | ECF CASE<br><br>No.: 1:20-cv-1287 (FJS/DJS) |
| Plaintiffs,<br>v. | CLASS AND COLLECTIVE ACTION COMPLAINT |
| KANEX INC. d/b/a GRAND MOUNTAIN HOTEL, ALEX SMUSHKOVICH and TATYANA RUGANOVICH, Jointly and Severally, | JURY TRIAL DEMANDED |
| Defendants. | |

## NATURE OF THE ACTION

1.      Named Plaintiffs Sergei Rakhmanin, Natalia Stepanova and Svetlana Larina ("Named Plaintiffs") worked mainly as servers for Defendants Kanex Inc. d/b/a Grand Mountain Hotel, Alex Smushkovich and Tatyana Ruganovich (collectively "Defendants") for various time periods between May 2016[1] to September 2019.

2.      Named Plaintiffs allege on behalf of themselves and other similarly situated current and former employees of Defendants, under Fed. R. Civ. P. 23 (a) and (b), that Defendants willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to pay spread-of-hours pay, (iv) unlawfully retaining gratuities, (v) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1; and (vi) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

---

[1] All date ranges and times in the Complaint are based on Named Plaintiffs' memory and good faith, best estimates.

3.      Named Plaintiffs allege on behalf of themselves and other similarly situated current and former employees of Defendants and those who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that Defendants willfully violated the FLSA by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, and (iii) unlawfully retaining gratuities.

4.      Plaintiff Stepanova further alleges Labor Law and FLSA retaliation claims.

JURISDICTION AND VENUE

5.      This Court also has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Named Plaintiffs' state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over their FLSA claims under 29 U.S.C. § 216(b).

6.      Venue is proper in this district under 28 U.S.C. §§1391(b)(1) and (2), as Defendant Kanex Inc. resides in this District and a substantial part of the events giving rise to the claims occurred in this District.

7.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

THE PARTIES

8.      Plaintiff Rakhmanin was, at all relevant times, a resident of Brooklyn, New York.

9.      Plaintiff Stepanova was, at all relevant times, a resident of Florida.

10.     Plaintiff Larina was, at all relevant times, a resident of Brooklyn, New York.

11.     Kanex Inc. d/b/a Grand Mountain Hotel ("GM Hotel") is a domestic business corporation, organized and existing under the laws of the State of New York with its principal place of business at 22 Mountaindale Road, Greenfield Park, Ulster County, New York, 12435.

2

12.    GM Hotel is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. GM Hotel is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and services include cleaning products, food and beverages.

13.    Defendant Alex Smushkovich is an individual who, upon information and belief, resides in Kings County, New York, and owns, operates and controls GM Hotel's day-to-day operations and management and jointly employed Named Plaintiffs and other similarly situated employees at all relevant times.

14.    Defendant Tatyana Ruganovich is an individual who, upon information and belief, resides in Kings County, New York and who owns, operates and controls GM Hotel's day-to-day operations and management and jointly employed Named Plaintiffs and other similarly situated employees at all relevant times.

15.    Defendants had control over Named Plaintiffs' and other similarly situated employees' working conditions and over the unlawful policies and practices detailed in this Complaint.

16.    Defendants are covered employers within the meaning of the FLSA and the Labor Law and, at all relevant times, employed Named Plaintiffs and other similarly situated employees.

17.    Each Defendant, either directly or indirectly, has hired and fired Named Plaintiffs and other similarly situated employees and controlled their work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

3

## STATEMENT OF FACTS

18.    GM Hotel is a seasonal hotel located at 22 Mountaindale Road, Greenfield Park,

Ulster County, New York, 12435.

19.    GM Hotel is not an amusement or recreational establishment.

20.    Upon information and belief, Defendants employ 11 or more employees at any one

given time.

21.    GM Hotel is open every year from about May to September. Defendants' staff,

including the Named Plaintiffs, spent the first few weeks in May and sometimes in June preparing

the GM Hotel for the guests, by cleaning, repairing and renovating it. After the hotel was ready,

Defendants opened for business to the guests, providing them with sleeping arrangements, a fixed

menu at breakfast, lunch and dinner at their restaurant, a pool and occasional evening

programming.

22.    A typical stay for a guest or a group of guests at the GM Hotel lasts from one to

two weeks. Upon information and belief, Defendants usually host at least 80 to 150 guests every

two weeks.

23.    Defendants Smushkovich and Ruganovich are regularly at the GM Hotel,

interacting with guests and employees; they instruct employees what to do; they have the authority

to hire and fire employees, change employees' pay and employee's schedules; and they are

required by law to keep records regarding their employees' hours worked and compensation.

Time Periods Worked and Duties Performed[2]

24.    Defendants employed Plaintiff Rakhmanin as a repairman, server, kitchen helper

and dishwasher from May 8, 2016 to September 13, 2016, May 2017 to September 10, 2017, May

---

[2] These subject lines are included only for organizational purposes.

2018 to September 13, 2018 and from mid-May 2019 to June 2019.

25. Each year that he worked for Defendants, Plaintiff Rakhmanin generally spent two to four weeks at the beginning of each season working as a repairman. During this time he painted, repaired and renovated the GM Hotel in preparation for the guests' arrival.

26. After Plaintiff Rakhmanin completed the renovations, he worked the rest of the season as a server. Additionally, on an as needed basis, he also worked in the kitchen as a dishwasher and a kitchen helper, washing, loading and unloading dishes, peeling and cutting vegetables and fruits, and loading and unloading microwave and oven with meals.

27. Defendants employed Plaintiff Stepanova as a server from June 15, 2018 to August 9, 2018.

28. Defendants employed Plaintiff Larina as a server from June 17, 2019 to August 2, 2019.

29. During her employment with Defendants, Plaintiffs Stepanova spent several days cleaning and preparing the GM Hotel for guests' arrival before she began working as a server.

30. Named Plaintiffs, as servers, were responsible for taking guests' food and beverage orders, serving them food and drinks, and performing non-tipped side-work, such as setting up tables, cleaning the tables, taking out garbage, polishing silverware and etc.

31. During their employment with Defendants, due to high turnover, upon information and belief, Named Plaintiffs collectively worked with between 20 to 30 similarly situated employees. From personally observing and speaking with them, Named Plaintiffs know that their co-workers performed the same primary duties as them and were compensated in the same manner. These coworkers include Tanya [last name unknown], Misha [last name unknown], Sasha [last name unknown], Lena [last name unknown], Alik [last name unknown], Galya [last name

unknown] and Jenia [last name unknown].

Days and Hours Worked

32.    Throughout their employment with Defendants, Named Plaintiffs regularly worked in excess of 40 hours per week.

33.    When Plaintiff Rakhmanin worked for Defendants as a repairman during the first two to four weeks of each season, he generally worked seven days a week, from 8:00 a.m. to 5:00 p.m., without any breaks, equaling at least 63 hours per week.

34.    When Plaintiff Rakhmanin worked for Defendants as a kitchen staff member he generally worked more than 40 hours a week.

35.    When Plaintiff Rakhmanin worked for Defendants as a server he generally worked more than 40 hours a week.

36.    When Named Plaintiffs worked for Defendants as servers, they typically worked seven days a week, from 8:00 a.m. to 8:00 p.m. or 10:00 p.m., with a 30-minute lunch break, averaging 13 hours a day and 117 hours per week.

37.    From observing and speaking with other similarly situated employees, Named Plaintiffs know that they also worked the same weekly schedule.

38.    Named Plaintiffs and other similarly situated employees were not required to keep track of their time, nor to their knowledge, did Defendants utilize any time tracking device, such as punch cards.

Unpaid Wages, Overtime, Spread-of-Hours Pay

39.    Defendants paid Named Plaintiffs their wages in cash.

40.    When Plaintiff Rakhmanin worked as a repairman, Defendants paid him $250.00 per week in 2016 and $300.00 per week in 2017 to 2019.

41.     In 2016, Defendants paid Plaintiff Rakhmanin $250.00 per week as a server and kitchen staff member.

42.     From 2017 to 2019, Defendants paid Plaintiff Rakhmanin $400.00 per week as a server and kitchen staff member.

43.     Defendants paid Plaintiff Stepanova $350.00 per week for the first week or two of work, after which time they paid her $400.00 per week.

44.     Defendants paid Plaintiff Larina $400.00 per week.

45.     Named Plaintiffs' pay did not vary regardless of how many hours they worked.

46.     Defendants were not permitted to pay Named Plaintiffs a fixed weekly salary[3].

47.     Defendants failed to pay Named Plaintiffs the federal and state minimum wage because their average hourly rates fell below the applicable federal and state wage requirements during their employment.

| Year | Rakhmanin's Weekly Earnings | Stepanova's Weekly Earnings | Larina's Weekly Earnings Plaintiff | Minimum Weekly Hours Worked[4] | Named Plaintiffs' Average Hourly Rates |
|------|------|------|------|------|------|
| 2016 | $250.00 | N/A | N/A | 117 | $2.13[5] |
| 2017 | $400.00 | N/A | N/A | 117 | $3.41 |
| 2018 | $400.00 | $350.00 / $400.00 | N/A | 117 | $2.99 / $3.41 |
| 2019 | $400.00 | N/A | $400.00 | 117 | $3.41 |

---

[3] 12 N.Y.C.R.R. § 146-2.5
[4] For the purpose of this calculation we use Named Plaintiffs' hours and earned wages as servers. We do not calculate Plaintiff Rakhmanin's average hourly rates as a repairman, however they were below the federal and state minimum wage during every year of his employment.
[5] $250.00 / 117 hours worked = $2.136 average hourly wage

| Year | Rakhmanin's Average Hourly Rate | Stepanova's Average Hourly Rate | Larina's Average Hourly Rate Plaintiff | FLSA Minimum Wage[6] | NYLL Minimum Wage[7] |
|---|---|---|---|---|---|
| 2016 | $2.13 | N/A | N/A | $7.25 | $9.00 |
| 2017 | $3.41 | N/A | N/A | $7.25 | $11.00 |
| 2018 | $3.41 | $2.99 /$3.41 | N/A | $7.25 | $13.00 |
| 2019 | $3.41 | N/A | $3.41 | $7.25 | $15.00 |

48. By paying Named Plaintiffs a fixed weekly salary, Defendants failed to pay them *any* overtime compensation.

49. Because Defendants paid Named Plaintiffs fixed weekly salaries, their effective hourly rate, for purposes of determining at what overtime rate they should get paid, is determined by dividing their weekly earnings by the lesser of 40 hours or the actual number of hours worked per week.[8]

50. Their effective hourly rate, however, must be at least the minimum wage.[9]

| Year | Weekly Hours Worked | Rakhmanin's Weekly Earnings[10] | Effective Hourly Rate[11] | Effective Overtime Rate |
|---|---|---|---|---|
| 2016 | 117 | $250.00 | $9.00 | $13.50 |
| 2017 | 117 | $400.00 | $11.00 | $16.50 |
| 2018 | 117 | $400.00 | $13.00 | $19.50 |
| 2019 | 117 | $400.00 | $15.00 | $22.50 |

51. For the days they were scheduled to and worked more than 10 hours in a day, Defendants did not pay Named Plaintiffs spread-of-hours pay: an extra hour at the statutory

---

[6] https://www.dol.gov/whd/minwage/coverage.htm (last visited September 16, 2020).

[7]https://labor.ny.gov/workerprotection/laborstandards/workprot/minwage.shtm          and https://labor.ny.gov/workerprotection/laborstandards/workprot/minwage.shtm     (last     visited September 16, 2020)

[8] 12 N.Y.C.R.R. § 146-3.5

[9] 12 N.Y.C.R.R. § 146-1.1

[10] Although Named Plaintiffs were generally paid the same weekly salaries, but since only Plaintiff Rakhmanin worked all years, we use his earnings for the calculation.

[11] Since Named Plaintiffs' effective hourly rate was below minimum wage, we use the New York State minimum wage here.

minimum wage.

<u>Unlawfully Retained Service Charges and Additional Tips</u>

52.     During all relevant times, Defendants automatically charged their guests a certain percentage on top of their lodging costs on their final bills as a service charge that the guests understood was to be allocated to the Named Plaintiffs and other similarly situated employees as their gratuities.

53.     During all relevant times, Defendants hosted approximately 80 to 150 guests every two weeks and, upon information and belief, each guest left between $25.00 to $50.00 as a service charge to Named Plaintiffs and other similarly situated employees.

54.     Defendants failed to remit the service charges left by their guests to Named Plaintiffs and other similarly situated employees, instead they unlawfully kept this money for their own benefit.

55.     On top of the automatic service charges, Defendants' guests are free to leave additional tips to Named Plaintiffs and other similarly situated employees.

56.     During the guests' stay, Defendants actively discourage them to give any tips directly to Named Plaintiffs and other similarly situated employees for their services at the end of their meals or during their stay. Defendants, instead, told the guests that it is best that they add any additional tips to their bill at the end of their stay and pay them to Defendants so that they can distribute the additional tips to the servers, the kitchen staff and other similarly situated employees.

57.     Defendants did not inform their guests that they were retaining any portion of the service charges or the additional tips they left to Named Plaintiffs and other similarly situated employees. The guests reasonably believed 100% of the service charges and additional tips were being remitted to the servers, kitchen staff and other serving staff at GM Hotel.

58.     During her employment, Plaintiff Stepanova overheard Defendant Ruganovich telling guests multiple times that they should not be tipping any of the staff and that any tips they want to leave should be paid directly to Defendants and they will distribute the tips to the servers, the kitchen staff and other employees who take care of the guests at GM Hotel. Despite what was told to the guests, Defendants retained 100% of the tips.

59.     From speaking with them, Named Plaintiffs know that other servers and kitchen staff, like them, were paid an impermissible weekly salary, were paid below the statutory minimum wage, were not paid for all hours worked, were not paid overtime premium pay, were not paid spread-of-hours pay, and did not receive 100% of their service charges and tips.

60.     Upon information and belief, Defendants had no policy or practice to track how much in tips Named Plaintiffs and other servers received on a daily or weekly basis.

Retaliation against Plaintiff Stepanova

61.     During her employment, Plaintiff Stepanova complained to Defendants about them keeping servers' service charges and gratuities, but Defendants ignored her complaints.

62.     Plaintiff Stepanova also complained that $350.00 per week was below the legal minimum she should be paid and Defendants, in turn, raised it to $400.00 after her first week of work. However, when Plaintiff Stepanova continued to complain to Defendants Smushkovich and Ruganovich about their unlawful pay practices, they retaliated against her and fired her on August 9, 2018.

Labor Law Notice Violations

63.     Defendants failed to provide Named Plaintiffs and other similarly situated employees with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment.

64.    Likewise, Defendants did not provide Named Plaintiffs or the other waitstaff with an accurate wage statement under N.Y. Lab. Law § 195.3 with any wage payment.

65.    Defendants did not post at the GM Hotel a poster advising Named Plaintiffs and other employees of their right to a minimum wage and overtime premium pay.

<u>CLASS ACTION ALLEGATIONS</u>

66.    Named Plaintiffs assert these allegations and claims on their own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed who were waitstaff and other comparable tipped positions with different titles, including "server," "waiter," "waitress," or "busser" and all persons who were kitchen staff and other comparable positions with different titles, including "cooks," "prep cooks," "chefs," "sous-chef," "dishwasher," "kitchen helper" or "salad prepper" at any time since October 16, 2014 to the entry of judgment in this case (the "Class Period"), who were non-exempt employees within the meaning of the New York Labor Law ("Class Members").

67.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 50 Class Members exist.

68.    Named Plaintiffs' claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

69.    Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

70.    Named Plaintiffs are committed to pursuing this action and have retained competent

counsel experienced in employment law, wage and hour law, and class action litigation.

71.    Named Plaintiffs have the same interest in this matter as all other Class Members and their claims are typical of Class Members'.

72.    Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including but not limited to:

a.    whether Defendants employed Named Plaintiffs and the Class Members, individually or jointly, within the meaning of the Labor Law;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Named Plaintiffs and the Class Members;

c.    what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.    whether Defendants failed or refused to pay the Class Members minimum wages, overtime premium pay for all hours worked in excess of 40 hours per workweek, and spread-of-hours pay;

e.    whether Defendants maintained adequate records of the tips that the Class Members received;

f.    whether Defendants failed to provide the Class Members with wage notices and wages statements under Labor Law §§ 195.1 and 195.3;

g.    whether Defendants withheld tips and/or gratuities within the meaning of the Labor Law, violating Labor Law § 196-d;

h.    whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Named Plaintiffs and the Class Members are employed;

i.     whether the individual Defendants participated in the day-to-day management of the GM Hotel and are "joint employers" and liable to Named Plaintiffs and the Class Members;

j.     whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

k.     whether Defendants should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

73.     Under 29 U.S.C. § 206, Named Plaintiffs seek to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed who were wait staff and other comparable tipped positions with different titles, including "server," "waiter," "waitress," or "busser" and all persons who were kitchen staff and other comparable positions with different titles, including "cooks," "prep cooks," "chefs," "sous-chef," "dishwasher," "kitchen helper" or "salad prepper" at any time since October 16, 2017 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA (the "Collective Action Members").

74.     Named Plaintiffs and the Collective Action Members are similarly situated on several legal and factual issues, including but not limited to:

a.     whether Defendants employed the Collective Action Members within the meaning of the FLSA;

b.     whether the Collective Action Members performed similar duties;

c.     whether Defendants willfully or recklessly violated the FLSA;

d.     whether Defendants failed to pay the Collective Action Members minimum wages, and overtime compensation for hours worked in excess of 40 hours per workweek, violating the FLSA and the regulations promulgated thereunder;

13

e.    whether Defendants improperly withheld tips and gratuities, violating 29 U.S.C. § 203(m); and

f.    whether the statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

## FIRST CAUSE OF ACTION
FAILURE TO PAY THE MINIMUM WAGE UNDER THE FLSA
(On Behalf of Named Plaintiffs and the Collective Action Members)

75.    Named Plaintiffs repeat every preceding allegation as if set forth fully herein.

76.    Named Plaintiffs consent in writing to be a party to this action under 29 U.S.C. §216(b), which is attached to this Complaint and incorporated by reference.

77.    Defendants employed and/or continue to employ Named Plaintiffs and the Collective Action Members within the meaning of the FLSA.

78.    Defendants knowingly failed to pay Named Plaintiffs and the Collective Action Members the minimum wages to which they were entitled under the FLSA.

79.    Defendants were required to pay Named Plaintiffs and the Collective Action Members the full minimum wage rate for all hours worked.

80.    Defendants failed to pay Named Plaintiffs and the Collective Action Members at the minimum wage for all hours worked.

81.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit and when the Court conditionally certifies the collective action.

82.    As a result of Defendants' FLSA violations, Named Plaintiffs and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated

damages, prejudgment interest, attorneys' fees, costs, and other compensation under 29 U.S.C. §
216(b), and such other legal and equitable relief as this Court deems just and proper.

SECOND CAUSE OF ACTION
FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE FLSA
(On Behalf of Named Plaintiffs and the Collective Action Members)

83.     Named Plaintiffs repeat every preceding allegation as if set forth fully herein.

84.     Defendants were required to pay Named Plaintiffs and the Collective Action
Members no less than 1.5 times the regular rate at which they were paid for all hours worked in
excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29
U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

85.     At all relevant times, Defendants had a policy and practice of refusing to pay
overtime compensation to their employees for their hours worked in excess of 40 hours per
workweek.

86.     Defendants were aware or should have been aware that the practices described in
this Complaint were unlawful, making their violations willful or reckless.

87.     Defendants have not made a good faith effort to comply with the FLSA with respect
to Named Plaintiffs and the Collective Action Members' compensation.

88.     Defendants have failed to make, keep and preserve records with respect to their
employees sufficient to determine the wages, hours, and other conditions and practices of
employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

89.     In failing to compensate Named Plaintiffs and the Collective Action Members for
all compensable hours worked, Defendants violated the FLSA and the regulations thereunder,
including 29 C.F.R. §§ 785.13, 785.11.

THIRD CAUSE OF ACTION
FAILURE TO PAY THE MINIMUM WAGE UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiffs and the Class Action Members)

90.     Named Plaintiffs repeat every preceding allegation as if set forth fully herein.

91.     Defendants are "employers" within the meaning of Labor Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Named Plaintiffs and the Class Members.

92.     The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Named Plaintiffs and the Class Members.

93.     Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Named Plaintiffs and the Class Members the statutory minimum wage.

94.     Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. § 137-2.3, *et seq.*

95.     Upon information and belief, Defendants failed to furnish Named Plaintiffs and the Class Members a statement with every wage payment listing the correct hours worked, rates paid, allowances taken, gross wages, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. § 137-2.2, *et seq.*

96.     Defendants failed to pay the Class Members the statutory minimum wage for each hour worked, making them liable for those hours at the statutory minimum wage.

97.     Defendants are accordingly liable to Named Plaintiffs and the Class Action

Members for the unpaid hourly minimum wage for all the hours worked.

98.     Defendants have willfully violated the Labor Law by knowingly and intentionally failing to pay the Class Members the minimum wage.

99.     Due to Defendants' Labor Law violations, Named Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

100.     Named Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege every allegation of the preceding paragraphs as if fully set forth herein.

<u>FOURTH CAUSE OF ACTION</u>
FAILURE TO PAY OVERTIME PAY UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiffs and the Class Action Members)

101.     Named Plaintiffs repeat every preceding allegation as if set forth fully herein.

102.     Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Named Plaintiffs and the Class Members 1.5 times their regular rate of pay for all hours they worked in excess of 40 per workweek.

103.     Defendants failed to pay the Class Members the overtime wages to which they were entitled, violating N.Y. Lab Law § 650 and Part 146, § 146-1.4 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

104.     In failing to compensate Named Plaintiffs and the Class Members for all compensable hours worked, Defendants violated the Labor Law and the regulations thereunder, 12 N.Y.C.R.R. §§ 146-1.2, 1.4.

105.     Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay the Class Members the correct amount of overtime wages.

106.    Due to Defendants' Labor Law violations, Named Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>FIFTH CAUSE OF ACTION</u>
FAILURE TO PAY SPREAD-OF-HOURS PAY UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiffs and the Class Action Members)

107.    Named Plaintiffs repeat every preceding allegation as if set forth fully herein.

108.    Defendants operate a hotel and a restaurant included within the hospitality industry and, as such, are covered under the Hospitality Industry Wage Order. 12 N.Y.C.R.R. §§ 146-3.1.

109.    Defendants failed to pay Named Plaintiffs and the Class Members additional compensation for one hour's pay at the basic minimum hourly wage for each day during which they worked more than 10 hours (i.e., "spread-of-hours pay"), violating 12 N.Y.C.R.R. § 146-1.6.

110.    By failing to pay Named Plaintiffs and the Class Members spread-of-hours pay, Defendants have willfully violated the New York Lab. Law Article 19, §§ 650 et seq. and the supporting New York State Department of Labor Regulations.

111.    Due to Defendants' Labor Law violations, Named Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours wages, statutory liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>SIXTH CAUSE OF ACTION</u>
UNLAWFULLY RETAINED GRATITUTIES UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiffs and the Class Action Members)

112.    Named Plaintiffs repeat every preceding allegation as if set forth fully herein.

113.    The service charges Defendants charged and the additional tips that guests left to

18

Named Plaintiffs and the Class Members are gratuities that belong to them under N.Y. LAB. LAW § 196-d.

114.    Defendants have willfully violated N.Y. LAB. LAW § 196-d by unlawfully retaining a portion of the service charges and additional tips, which are gratuities that should be remitted to the Class Members.

115.    Due to Defendants' violations of the Labor Law, Named Plaintiffs and the Class Members are entitled to recover from Defendants their unlawfully retained gratuities, statutory liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

<u>SEVENTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.1 NOTICE UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiffs and the Class Action Members)

116.    Named Plaintiffs repeat every preceding allegation as if set forth fully herein.

117.    Defendants have willfully failed to supply Named Plaintiffs and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under Labor Law § 195.1(a) within ten business days of their first employment date.

118.    Due to Defendants' violations of Labor Law § 195.1, Named Plaintiffs and the Class Members are entitled to recover from Defendants $50.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. New York. Lab. Law § 198(1)-b (2016).

<u>EIGHTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiffs and the Class Action Members)

119.    Named Plaintiffs repeat every preceding allegation as if set forth fully herein.

120.    Defendants have willfully failed to supply Named Plaintiffs and the Class Members with the required statement with every payment of wages, violating Labor Law § 195.3.

121.    Due to Defendants' violations of N.Y. Lab Law § 195.3, Named Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants $250.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-d (2016).

NINTH CAUSE OF ACTION
RETALIATION UNDER THE FLSA
(On Behalf of Plaintiff Stepanova)

122.    Plaintiff Stepanova realleges every preceding allegation as if set forth fully herein.

123.    Plaintiff Stepanova is an employee under 29 U.S.C. § 215(a)(3).

124.    Defendants are "employers" under 29 U.S.C. § 215(a)(3).

125.    Plaintiff Stepanova's complaints to Defendants about their failure to pay her in accordance with the law constitutes protected activity under the FLSA.

126.    Defendants fired Plaintiff Stepanova for complaining about their failure to pay her in accordance with the law, violating 29 U.S.C. § 215(a)(3).

127.    Due to Defendants' violations of the FLSA, Plaintiff Stepanova is entitled to recover from Defendants compensatory damages, punitive damages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

TENTH CAUSE OF ACTION
RETALIATION UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Stepanova)

128.    Plaintiff Stepanova realleges every preceding allegation as if set forth fully herein.

129.    Plaintiff Stepanova is an employee under N.Y. Lab. Law § 215.

130.    Defendants are "employers" under N.Y. Lab. Law § 215.

131.    Plaintiff Stepanova's complaints about Defendants' failure to pay her in accordance with the law constitutes protected activity under the Labor Law.

132.     Defendants fired Plaintiff Stepanova for complaining about their failure to pay her in accordance with the law, violating N.Y. Lab. Law § 215.

133.     Due to Defendants' violations of the Labor Law, Plaintiff Stepanova is entitled to recover from Defendants punitive damages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

PRAYER FOR RELIEF

WHEREFORE, Named Plaintiffs, on behalf of themselves and the Class and Collective Action Members, respectfully request this Court grant the following relief:

a.     Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Rule 23 Class Members and appointing Named Plaintiffs and their counsel to represent the Class Members;

b.     Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Named Plaintiffs and their counsel to represent the Collective Action Members and tolling of the statute of limitations;

c.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

d.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.     An award for unpaid minimum wage under the Labor Law and the FLSA;

   f.  An award for unpaid overtime premium pay, under the Labor Law and the FLSA;

   g.  An awarded for unlawfully retained gratuities under the Labor Law and the FLSA;

   h.  An award for unpaid spread-of-hours pay under the Labor Law;

   i.  An award for failing to provide the N.Y. LAB. LAW § 195.1 Notice;

   j.  An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

   k.  An award of liquidated damages as a result of Defendants' Labor Law violations;

   l.  An award of liquidated damages as a result of Defendants' willful FLSA violations;

   m.  Equitably tolling the statute of limitations under the FLSA;

   n.  An award of pre-judgment and post-judgment interest;

   o.  An award of compensatory and punitive damages for Defendants' unlawful retaliatory conduct against Plaintiff Stepanova;

   p.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

   q.  Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Named Plaintiffs demand a trial by jury on all questions

of fact the Complaint raises.

Dated:  New York, New York
        October 16, 2020

                                 LIPSKY LOWE LLP

                                 <u>s/ Douglas B. Lipsky</u>
                                 Douglas B. Lipsky
                                 Milana Dostanitch
                                 420 Lexington Avenue, Suite 1830
                                 New York, New York 10170-1830
                                 212.392.4772
                                 doug@lipskylowe.com
                                 milana@lipskylowe.com